IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN BUTLER | : | CIVIL ACTION |
| | : | NO. 12-1955 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

O'NEILL, J.                                                                            September 17, 2014

### MEMORANDUM

I have before me the motion for summary judgment of defendants the City of Philadelphia, Police Officers Perez, Barr[1] and Juan Borrero and plaintiff Calvin Butler's response thereto.[2] Plaintiff, proceeding pro se, alleges violations of his Fourth Amendment and other constitutional rights pursuant to 42 U.S.C. § 1983. For the reasons below, I will grant defendants' motion.

### BACKGROUND

On October 17, 2010, at approximately 9:45 p.m. defendant police officers Borrero and Barr, while on patrol, observed a parked grey Cadillac vehicle on the 1300 block of West Lehigh Avenue in Philadelphia.[3] Dkt. No. 83 (Ex. B). The officers assert, but plaintiff disputes, that plaintiff was parked illegally in a bus zone. See id. at ECF p. 2. The officers reported that they

---

[1] Plaintiff does not identify the first names of Perez and Barr.

[2] I previously dismissed plaintiff's claims against the City of Philadelphia Police Department, District Attorney Seth Williams, Assistant District Attorney Kevin Harding, Dkt. No. 11, and against plaintiff's former counsel, Gerald Stein, Dkt. No. 53.

[3] Plaintiff testified that he was parked in his vehicle while waiting for an acquaintance with whom he had planned on "getting high" that evening, possibly with heroin "if he had money." See Dkt. No. 77-1 at 12:16-13:12.

saw plaintiff "passed out" with his head resting on the headrest in the driver's seat, a belt wrapped around his arm, a needle next to his arm with blood on it and an empty wrapper of heroin and a bottle cap with white residue on the console of the vehicle. Id. (Ex. B). The officers reported that plaintiff was incoherent, had "glassy eyes," was unsteady on his feet and appeared high on narcotics when he was ordered to step out of his vehicle.[4] Id.

Plaintiff testified that although his head was leaning against the headrest, he was awake when the officers approached the vehicle and one "snatched the door open and just snatched [him] out of the car" before handcuffing him. Dkt. No. 77-1 at 19:19-20. Plaintiff testified that he was "borderline diabetic." Dkt. No. 77-1 at 21:11-17. Plaintiff admits that he had a "full box" of "diabetic needles" in his vehicle that he claims he used for a medical purpose. Id. at 21:4-5; Dkt. No. 83 at ECF p. 2. Plaintiff also testified that he had "diabetic pills" in his vehicle on the day of his arrest and there was also "probably" a belt, along with other items of clothing.

---

[4] Plaintiff's Police Department Arrest Report states that officers Barr and Borrero observed:

> A grey cadillac parked with the driver behind wheel with his head down appeared pass out[.] [They] put [their] over head lights on went over the driver side[.] [P]olice observe the driver with brown belt wrapped around his left arm with needle next to this arm with some blood in it also was empty blue wrapper of heroin next to him in console was bottle cap with white reside it took police several attempts to wake the driver up the keys to veh[icle] were in ignition police order th[e] driver to put the needle over to pass[en]ger side seat and his belt[.] [P]olice order the driver to step out of the veh[icle.] the driver had glassy eyes he was in[coherent] had to be told couple times he was unsteady on his feet the driver appeared high on narc[otics][.] [D]river was placed under arrest for DUI transported to PDU . . . .

Dkt. No. 83 (Ex. B); see Dkt. No. 6 at ECF p. 12 (Police Incident Report).

Dkt. No. 77-1 at 22:3-12.  Plaintiff testified that at no time during that day was he "high" in his vehicle.  Id. at 22:10-13.

The officers subsequently arrested plaintiff and transported him to the Philadelphia Police Department where his blood was drawn to test for the use of alcohol or controlled substances.  Id. at 22:23-23:1-2.  A Police Department Detainee's Medical Checklist created on the night of plaintiff's arrest at 11:22 p.m. reported "yes" to the following visual check questions:  "Does [ ]he appear to be under the influence of alcohol/drugs?" "Are there visible signs of alcohol and/or drug withdrawal?"  Dkt. No. 83 (Ex. B).  Plaintiff was ultimately charged with violation of the Pennsylvania Vehicle Code § 3802 (Driving Under Influence of Alcohol or Controlled Substance).[5]  Dkt. No. 77-2 (Ex. F).

Plaintiff asserts Fourth Amendment claims for false arrest, false imprisonment and malicious prosecution against defendant officers in their individual and official capacities and a Monell claim against the City of Philadelphia pursuant to § 1983.  He seeks compensatory and punitive damages and also seeks to enjoin the City's alleged policy of racial profiling.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[5] The Commonwealth of Pennsylvania Philadelphia County Criminal Complaint against plaintiff charged that "[o]n 10/17/10 at 1301 W. Lehigh Avenue, [plaintiff] operated a motor vehicle while under the influence of drugs or alcohol to such a degree as to render [him] incapable of safe operation."  Dkt. No. 77-2 (Ex. F); see also Dkt. No. MC51-CR-0044894-2010 (Phila. Cnty. Phila. Mun. Ct.).

law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  A fact is "material" if it might affect the outcome of the case under governing law. Id.

> In order to establish "that a fact cannot be or is genuinely disputed," a party must:
>
> > (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

### I.  Fourth Amendment Claims

#### A.  False Arrest and False Imprisonment

False arrest and false imprisonment are "nearly identical claims" that may be "analyzed

-4-

together." Brockington v. City of Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005), citing Gagliardi v. Lynn, 285 A.2d 109 (Pa. 1971). Claims of both false arrest and false imprisonment are predicated on an arrest made without probable cause in violation of the Fourth Amendment. Baker v. McCollan, 443 U.S. 137, 145 (1979); see also Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). A warrantless arrest by a police officer is permissible under the Fourth Amendment where the arrest is supported by probable cause. Devenpeck v. Alford, 543 U.S. 146, 153 (2004). Conversely, an arrest supported by probable cause is not a constitutional violation and is not a basis for an action under § 1983. Therefore, the threshold question for plaintiff's false arrest and false imprisonment claims is whether defendants police officers had probable cause to arrest him. See Baker, 443 U.S. at 143-46 (finding that arrests made with probable cause do not violate due process and thus do not violate § 1983); Groman, 47 F.3d at 634 (noting that in order to prevail on a false arrest claim under § 1983 plaintiffs would have to prove police lacked probable cause to arrest).

Generally, the existence of probable cause is a question of fact for the jury. Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998), citing Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir. 1978). However, if the evidence of probable cause, viewed in the light most favorable to the non-moving party, "reasonably would not support a contrary factual finding," the Court may find that probable cause existed as a matter of law. Minatee v. Phila. Police Dep't, 502 F. App'x 225, 228 (3d Cir. 2012), quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000). Summary judgment is appropriate if a reasonable jury could not conclude that defendant police officers lacked probable cause to arrest plaintiff. Groman, 47 F.3d at 635. Probable cause to arrest is present when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or

is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).

In making a probable cause determination, I must consider "the totality of the circumstances presented," and "assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." U.S. v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002) (internal citations omitted). Importantly, the constitutionality of plaintiff's arrest does not turn on whether the plaintiff actually committed a crime. Baker, 443 U.S. at 145-46 ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released."). Nor is it relevant to the analysis of probable cause what crime plaintiff was eventually charged with. Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005), citing Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). "The arresting officer must only reasonably believe at the time of the arrest that an offense is being committed, a significantly lower burden than proving guilt at trial." Conner v. Mastronardy, No. 13-3034, 2014 WL 2002350, at *3 (D.N.J. May 14, 2014); see Wright, 409 F.3d at 602.

In order to determine whether plaintiff's arrest was valid, I must look to the law of the state where the arrest took place. Wright, 409 F.3d at 601, citing U. S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002). In Pennsylvania, the use of, or possession with intent to use, drug paraphernalia for the purpose of "injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance" is a violation of the Controlled Substance, Drug, Device and Cosmetic Act. 35 Pa. Cons. Stat. § 780-113 (a)(32). Hypodermic syringes and needles have

been specifically included in the Act as "drug paraphernalia."[6] 35 Pa. Cons. Stat. § 780-102 (b)(11); see Com. v. Rosenfelt, 662 A.2d 1131, 1136-37 (Pa. Super. Ct. 1995). Additionally, Pennsylvania's Vehicle Code prohibits driving under the influence of alcohol or drugs. 75 Pa. Cons. Stat. § 3802 (a)-(g). Specifically, the Code not only prohibits an individual from the operation of the vehicle but also "actual physical control of the movement of a vehicle" while under the influence.[7] Id.

Plaintiff was sitting in the driver's seat of his vehicle and was in possession of its keys

---

[6] The Act notes that:

> In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, statements by an owner or by anyone in control of the object concerning its use, prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance, the proximity of the object, in time and space, to a direct violation of this act, the proximity of the object to controlled substances, the existence of any residue of controlled substances on the object, direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this act, the innocence of an owner or of anyone in control of the object, as to a direct violation of this act should not prevent a finding that the object is intended for use or designed for use as drug paraphernalia . . . .

35 Pa. Cons. Stat. § 780-102.

[7] Pennsylvania precedent indicates that a combination of factors such as whether the motor was running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle, is required to make a determination of whether a person had "actual physical control" of a vehicle. Com. v. Williams, 941 A.2d 14, 27 (Pa. Super. Ct. 2008). However, merely sitting in the driver's seat of a car that is not running and holding the keys to the truck, without more, does not rise to the level of actual physical control necessary to support a conviction for DUI. Com. v. Price, 610 A.2d 488, 490 (Pa. Super. Ct. 1992).

when officers approached him.  Dkt. No. 77-1 at 11:9-13; see also Dkt. No. 83 at ECF p. 2.  Plaintiff does not dispute the officers' observation that he appeared to be high and was unsteady on his feet when he was ordered out of his car prior to his arrest; his physical condition was later corroborated by the Police Department Medical Detainee Checklist created at the time of plaintiff's booking that indicated he appeared to be under the influence and had visible signs of withdrawal.  Dkt. No. 83 (Ex. B).  Plaintiff admits that he possessed hypodermic needles, a belt and pills in his vehicle at the time of his arrest.  Dkt. No. 77-1 at 20:4-5, 22:3-12.  Plaintiff does not dispute the officers' assertion that these items were in plain view on the passenger seat of the vehicle.[8]  Although plaintiff disputes his alleged use of drugs on the day of his arrest, plaintiff does not dispute the statements in the officers' Incident Report, Dkt. No. 6 at ECF p. 12, or Police Department Arrest Report, id. (Ex. B), that a belt was wrapped around his left arm and a needle was located next to his arm with blood on it.  While there may be valid reasons, as plaintiff asserts, for his possession and/or use of the hypodermic syringes, probable cause merely requires that officer defendants reasonably inferred criminality from the totality of the

---

[8] Rather, plaintiff contends that the items could only have been in plain view if he were charged with drug-related crimes and "evidence was obtained or preserved" from his vehicle that night.  In his amended complaint, plaintiff alleged that: "Officer Barrero made a complaint mentioning [d]rugs and paraphernalia, but none was taken into evidence.  If thing of as [c]riminal sort were in plain view and or found after search these things should have been charged to myself as crimes not DUI.  But no evidence was obtained or preserved . . . . "  Dkt. No. 7 at ECF p. 8.  Similarly, plaintiff asserts in his response to defendants' motion for summary judgment: "I had no association with drugs on Oct. 17 2010 and if I had why was I not arrested on the proper charges . . . .  This arrest should not have been a DUI, [I] was not charged with drug possession or possession of paraphernalia but [DUI] was the inappropriate charge that was applied."  Dkt. No. 83 at ECF p. 3.  Plaintiff's argument is unavailing because as I have discussed, the constitutionality of an arrest does not turn upon whether plaintiff actually committed a crime or what crime he is eventually charged with.  Baker, 443 U.S. at 145-46; Wright, 409 F.3d at 602.  What matters is whether the officers had probable cause to arrest plaintiff.

circumstances.  See Eckman v. Lancaster City, 742 F. Supp. 2d 638, 650 (E.D. Pa. 2010), aff'd, 515 F. App'x 93 (3d Cir. 2013), and aff'd, 529 F. App'x 185 (3d Cir. 2013), quoting Com. v. Smith, 979 A.2d 913, 917 (Pa. Super. Ct. 2009) ("Police have probable cause when 'criminality is one reasonable inference; it need not be the only, or even the most likely, inference . . . .'").

In considering the totality of the circumstances, I find that it was not unreasonable for the officers to have inferred that plaintiff was in the act of committing or had committed Pennsylvania health and safety and/or vehicle code violation(s).  The police officers' observation that at approximately 9:45 p.m. plaintiff was sitting in the driver's seat of his car in possession of the vehicle keys, had items which may be drug paraphernalia in plain view and appeared to be under the influence, is sufficient for a finding of probable cause to arrest plaintiff.  See Com. v. Miller, 56 A.3d 424, 430-31 (Pa. Super. Ct. 2012) (finding that a police officer's observation of an unopened beer can in plaintiff's vehicle from a lawful vantage point, where the "incriminating evidentiary nature of the item was immediately apparent" "created probable cause to believe that a crime had been committed, i.e. that [plaintiff] was driving while under the influence . . . ."); Smart v. Twp. of Berlin, No. 07-6103, 2008 WL 5156679, at *3-4 (D.N.J. Dec. 5, 2008) (finding that where a police officer "lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, is sufficient" to give officer probable cause).  I will therefore grant summary judgment to defendants on plaintiff's claims of false arrest and false imprisonment.  See Anderson, 477 U.S. at 249-50 (noting that at the summary judgment stage, there is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted.").[9]

### B.     Malicious Prosecution

Plaintiff asserts a malicious prosecution claim under § 1983 against police officer Perez. See Dkt. No. 7 at ECF pp. 6-7.[10] In order to prove his malicious prosecution claim, plaintiff must demonstrate that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty . . . as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007), citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003). "If [p]laintiff[ ] ha[s] not proffered evidence sufficient to create a triable issue of fact as to all five prongs, [his] malicious prosecution claim must fail as a matter of law." Domenech v. City of Phila., No. 06-1325, 2009 WL 1109316, at *9 (E.D. Pa. Apr. 23,

---

[9] Even if plaintiff could establish that his arrest and imprisonment were in violation of his constitutional rights, qualified immunity would shield defendants from liability for plaintiff's claims. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007), citing Couden v. Duffy, 446 F.3d 483, 501 (3d Cir. 2006). As is set forth above, defendants reasonably, even if mistakenly, believed they had probable cause to arrest plaintiff and therefore would be entitled to qualified immunity even assuming the arrest was ultimately found to have been in violation of plaintiff's constitutional rights. See Smart, 2008 WL 5156679, at *4 ("This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued."), citing Hunter v. Bryant, 502 U.S. 224, 227 (1991).

[10] Because this plaintiff is proceeding pro se, I "must liberally construe his pleadings, and . . . apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). "[H]owever inartfully pleaded," pro se pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (noting that a petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

2009), aff'd, 373 F. App'x 254 (3d Cir. 2010).

As I have previously discussed, probable cause existed for plaintiff's arrest. Additionally, plaintiff fails to adduce evidence that Perez initiated criminal proceedings against him. See id. at *11, quoting Harris v. City of Phila., No. 97-3666, 1998 WL 481061, at *5 (E.D. Pa. Aug. 14, 1998) ("In most circumstances, a plaintiff cannot proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual."). Finally, plaintiff fails to provide any evidence that Perez acted maliciously or for a purpose other than bringing plaintiff to justice. Accordingly, I will grant summary judgment in favor of defendants on plaintiff's claim of malicious prosecution.

C.   **Other Claim**

Plaintiff also asserts a claim against officer Perez for his allegedly false testimony in court against plaintiff. Plaintiff claims in his amended complaint that "officer Perez testified falsely under Perjury statu[t]ues and did not have Right to testify . . . ." Dkt. No. 7 at ECF p. 6. Here, I make no determination as to whether officer Perez testified falsely against plaintiff but I will grant summary judgment in favor of defendants on plaintiff's claim against Perez because "a[n] [officer] witness who testifies (falsely) in a judicial proceeding has absolute immunity from any § 1983 claim based on [his] testimony." Stackhouse v. Lanigan, No. 11-7554, 2013 WL 6145665, at *6 (D.N.J. Nov. 21, 2013); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1505-06 (2012); Briscoe v. LaHue, 460 U.S. 325, 332-33 (1983).

II.   **Monell Liability:  City of Philadelphia**

Plaintiff claims that the City of Philadelphia has an unconstitutional policy and custom of racial profiling. "When a suit against a municipality is based on § 1983, the municipality can

-11-

only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996), citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 611 (1978).  Plaintiff may establish the City's policy by proving that "'a decisionmaker posess[ing] final authority to establish municipal policy with respect to the action' issue[d] an official proclamation, policy, or edict." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990), quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).  Plaintiff may establish a municipality's custom by proving a course of conduct by officials, though not authorized by law, are "so permanent and well-settled" as to virtually constitute law, and also, by proof of knowledge and acquiescence.  Beck, 89 F.3d at 971 (citations omitted); Andrews, 895 F.2d at 1480, quoting Monell, 436 U.S. at 690.  "In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered." Watson v. Abington Twp., 478 F.3d 144, 156 (3d Cir. 2007), abrogated on other grounds by Miles v. Twp. of Barnegat, No. 05-1661, 2008 WL 89910 (D.N.J. Jan. 7, 2008), aff'd, 343 F. App'x 841 (3d Cir. 2009).

      Plaintiff claims that "Philadelphia has policy in place regarding arrest, and custom exist[s] also, but studies on Operation Stop and Frisk show that the Racial Profiling escalated around this time and the City of Philadelphia also has a History of Profiling . . . ." Dkt. No. 7 at ECF p. 9.  In his response to defendants' motion for summary judgment, plaintiff further asserts:

> [T]he Mayor of Philadelphia issued operation stop and frisk[. T]his policy and custom was followed by the Philadelphia police Department, this policy was then and has been found to be in direct violation of the rights afforded in the Constitution, this is not an allegation but a provable fact that can be easily confirmed if the defendant wishes to turn over Philadelphia's policy at the time of

>  [his] arrest . . . .

Dkt. No. 83 at ECF pp. 3-4. Here, plaintiff bears the burden of proving that the alleged City's policy and/or custom existed and that such was the proximate cause of his injuries. Watson, 478 F.3d at 156. However, plaintiff adduces no facts or evidence supporting his claim; his repeated bare assertions that the City has a policy and custom of racial profiling do not suffice. I find that plaintiff's conclusory assertions are insufficient to survive defendant's motion for summary judgment and I will enter judgment in favor of defendants on plaintiff's Monell claim against the City.

An appropriate Order follows.